UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:13-CR-014 |
| ) | |
| RANDALL ALLEN RINES ) | |

## **MEMORANDUM AND ORDER**

Now before the Court are the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i) and his *pro se* motion for the appointment of counsel. [Docs. 201, 210]. The United States has responded in opposition [docs. 221, 222] and the defendant has submitted a reply. [Doc. 229]. For the reasons that follow, the motions will be denied.

### I. BACKGROUND

In 2013, the Honorable Danny Reeves sentenced the defendant to a 270-month term of imprisonment for conspiring to distribute methamphetamine. The defendant was a Career Offender under the Sentencing Guidelines, and he also initially faced a mandatory life sentence due to two prior convictions for felony drug offenses. [Presentence Investigation Report ("PSR"), doc. 106, ¶¶ 2-4, 24, 66].

The defendant is presently housed at FCI Ashland with a projected release date of May 23, 2033. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Oct.

6, 2021). He moves for compassionate release due to the COVID-19 pandemic, type 2 diabetes, obesity, COPD, hypertension, his age (58), and his rehabilitative efforts.[1]

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on her behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

---

[1] The defendant also raises arguments pertaining to his conditions of confinement. Such claims might be cognizable, *see, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in the prisoner's district of confinement after the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(a). There is no evidence that this defendant has exhausted his administrative remedies on those claims, nor is he incarcerated in this judicial district.

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[2]

In *Jones*, the Sixth Circuit observed that "[d]istrict courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." 980 F.3d at 1114. Subsequently, in *Elias*, the appellate court "clarified" that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." 984 F.3d at 519.

A. **Exhaustion**

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 201]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

3

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, type 2 diabetes, obesity, COPD, hypertension, his age (58), and his rehabilitative efforts.

At the defendant's correctional institution, there are currently six staff and zero inmates positive for COVID-19, with 294 inmates and 94 staff having recovered, and six inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 6, 2021). These numbers are historically significant, but the Court simultaneously notes that outside the prison setting our nation remains in grave crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"). Additionally, at the defendant's prison 140 staff and 985 inmates have now been fully vaccinated. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 6, 2021). The defendant previously contracted COVID-19 and has since been vaccinated [doc. 222], although it is at this time common knowledge that persons can become infected with COVID-19 even if they have previously had the virus and even if

4

they are vaccinated.

BOP medical records confirm that the defendant had a bilateral partial lung removal in 2011 and is "a bad COPD patient." [*Id.*]. He has a "long history" of smoking, had two prior tracheostomies following a motor vehicle accident, and he developed double pneumonia at that time. [*Id.*]. He has type 2 diabetes which, as of February 2021, is "well controlled." [*Id.*]. The defendant is prescribed medication for hypertension. [*Id.*]. As of March 2, 2021, he weighed 225.6 pounds with a height of 71 inches [*id.*], resulting in a body mass index ("BMI") of 31.5. *See* Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Oct. 6, 2021). Persons with a BMI of 30 or greater are considered obese. *Id.*

Type 2 diabetes, COPD, obesity, hypertension, and smoking history are all conditions which possibly increase the risk of severe illness from COVID-19, and the risk of serious complications increases with age. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 6, 2021). In light of the defendant's combination of those health conditions, the Court will presume for purposes of the instant motion that he has met his burden of establishing an extraordinary and compelling basis for compassionate release.

The Court concludes, however, that the defendant's release would not be consistent with 18 U.S.C. § 3553(a). Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, the Court has considered the defendant's arguments (individually and in combination) along with the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant

5

to that statute,

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>>
>>> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
> . . .
>
> (5) any pertinent policy statement—

> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court appreciates that the defendant has incurred no disciplinary sanctions while serving his current sentence, that he continues to pursue his GED, and that he is participating in vocational and educational programming to the extent that such training is available during the pandemic. [Docs. 201; 221, p. 11]. The Court encourages him to remain on that path.

However, the defendant's offense conduct in this case represents the continuation of a lengthy and serious criminal history. Over a span of approximately 11 months, he conspired with others to distribute 99.9% purity methamphetamine. [Doc. 106, ¶¶ 10-11]. For sentencing purposes the defendant was held accountable for only 150 to 500 grams of methamphetamine, even though more than 48 pounds of the drug were imported into this district during the conspiracy. [*Id.*, ¶¶ 12-13].

The defendant's criminal history commenced in 1997 with convictions for reckless driving, false imprisonment, assault, and criminal trespass. [*Id.*, ¶¶ 31-33]. In 2001 he was again convicted of assault. [*Id.*, ¶ 34]. In 2004 he was convicted of possession of drug

7

paraphernalia, possession of methamphetamine with intent to sell, and simple possession of marijuana. [*Id.*, ¶¶ 36-37]. In 2005, he was convicted of possessing a material for use in manufacturing a controlled substance. [*Id.*, ¶ 38]. In two of those cases, his probation was subsequently revoked. [*Id.*, ¶¶ 37-38]. Lastly, there was a marijuana manufacture conviction in 2012, and he committed the instant offense while still on probation for that crime. [*Id.*, ¶ 39, 41].

Many of the defendant's cited health conditions predate the instant offense. His car accident and tracheostomies occurred in 2009. [*Id.*, ¶¶ 51-55]. He already had hypertension [*id.*, ¶ 56] and a history of smoking when sentenced in this case. None of those health issues were sufficient to keep him from participating in a large-scale methamphetamine conspiracy.

Of additional concern is the defendant's history of substance abuse which dates back to at least age 13. [*Id.*, ¶ 59]. He told his PSR writer that he "would like to participate in substance abuse treatment while in custody." [*Id.*]. However, according to July 2021 BOP records, he has "declined" drug treatment. [Doc. 221, Ex. 1].

The Court, again, appreciates the defendant's current disciplinary record and rehabilitative programming. That point, however, is substantially outweighed by the defendant's criminal history, his noncompliance with prior conditions of supervision, the health and substance abuse record discussed immediately above, and his role in a conspiracy which caused immeasurable harm to this region. Further, more than 11 years of actual time remain on the defendant's sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the

8

amount of time served in determining whether a sentence modification is appropriate."). Compassionate release on the facts of this case would not reflect the seriousness of the offense of conviction and the defendant's broader criminal history, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

### III. APPOINTMENT OF COUNSEL

As for the defendant's request for appointed counsel, there is no constitutional right to an attorney in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has *discretion*, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising that discretion, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary *pro se* litigant. Moreover, pursuant to this Court's Standing Order SO-19-04, Federal Defender Services of Eastern Tennessee ("FDSET") has already been appointed to represent all defendants who file a *pro se* § 3582(c)(1)(A) motion. FDSET has filed notice that, after a review of the defendant's case, it does not intend to submit any pleadings. [Doc. 220].

## IV. CONCLUSION

As provided herein, the defendant's motions for compassionate release and for the appointment of counsel [docs. 201, 210] are **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge